UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

JACQUELINE C. NICHOLS,

        Plaintiff,                      MEMORANDUM
                                            AND ORDER
                                          07-CV-3216 (JG) (VVP)

       -against-

WASHINGTON MUTUAL BANK,
NATIONAL FORECLOSURE RELIEF, INC.,
a Nevada Corporation, and AMIT LOUZON,
Individually,

                Defendants.
-----------------------------------------------------------x
A P P E A R A N C E :

        MICHAEL A. KAUFMAN, P.A.
                570 Lexington Avenue, 44th Floor
                New York, NY 10022
                Attorney for Plaintiff

        CULLEN AND DYKMAN LLP
                Garden City Center
                100 Quentin Rosen Boulevard
                Garden City, NY 11530
        By:    Candice B. Lieberman
                Attorneys for Defendant Washington Mutual Bank

        ADAMS AND REESE LLP
                2100 Third Avenue North, Suite 110
                Birmingham, AL 35203
        By:    Steven Walsh
                Attorneys for Defendant National Foreclosure Relief, Inc.

        MCELROY DEUTSCH MULVANEY & CARPENTER, LLP
                88 Pine Street, 24th Floor
                New York, NY 10005
        By:    Richard Scott Mills
                Attorneys for Defendant National Foreclosure Relief, Inc.

LAW OFFICES OF STEVEN E. ROSENFELD, PC
    575 Lexington Avenue, 10th Floor
    New York, NY 10022
By:    Steven E. Rosenfeld
    Attorneys for Defendant Amit Louzon

JOHN GLEESON, United States District Judge:

          Plaintiff Jacqueline Nichols sues Washington Mutual Bank ("Washington Mutual"), National Foreclosure Relief, Inc. ("National Foreclosure Relief"), and Amit Louzon under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and several New York laws. The claims arise out of the foreclosure sale of Nichols's co-op apartment. Nichols alleges that Washington Mutual improperly attempted to collect on its secured loan to her by referring her to National Foreclosure Relief, which represented that it would assist her in avoiding foreclosure of her apartment but failed to do so. She also claims that the foreclosure sale in which her co-op shares were sold to Louzon was not conducted in a commercially reasonable manner, in violation of Article 9 of New York's implementation of the Uniform Commercial Code, N.Y. U.C.C. §§ 9-613, 9-627. The defendants move to dismiss on various grounds. For the reasons stated below, Washington Mutual's motion to dismiss is granted, National Foreclosure Relief's motion to dismiss is denied, National Foreclosure Relief's motion to stay pending arbitration is granted, and Louzon's motion to dismiss is granted.

BACKGROUND

          On February 21, 1986, Nichols took out a loan from Washington Mutual, secured by her shares in 345 Montgomery Owners Corp., an owner's cooperative. On or about June 6, 2006, Nichols sent Washington Mutual a payment on her loan, and the payment was rejected.[1]

---

[1]      The facts set forth here are either undisputed or else Nichols's version of events. *See, e.g.*, *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 165 (2d Cir. 2005) ("Because we assume plaintiff's factual allegations to

Compl. ¶ 9-10.  That month, she called Washington Mutual, which informed her that her account

had been transferred to a foreclosure department and that the bank could not help her reinstate

her loan and avoid foreclosure.  *Id.* ¶¶ 10-12.  In July 2006, she called Washington Mutual again,

which again told her that it could not help her reinstate her loan and avoid foreclosure.  *Id.* ¶ 13.

During this telephone call, however, Washington Mutual informed Nichols that National

Foreclosure Relief was an affiliated company that could assist her in having her loan reinstated

by Washington Mutual.  *Id.* ¶ 14.

Nichols spoke to National Foreclosure Relief that month, and it indicated that it

was affiliated with Washington Mutual and could prevent Washington Mutual from foreclosing

on her apartment for a fee of $895.  *Id.* ¶¶ 15-16.  National Foreclosure Relief  "sent deceptive

notices" to Nichols.  *Id.* ¶ 17.  On November 8, 2006, Nichols received a fourteen-page fax from

National Foreclosure Relief, the last three pages of which bore the Washington Mutual logo and

contained sensitive account information regarding her Washington Mutual loan.  Declaration of

Jacqueline C. Nichols, Nov. 1, 2007, ¶¶ 6-10 & Ex. B.  On November 10, 2006, Nichols paid

National Foreclosure Relief an $895 fee.  Compl. ¶ 19.

Nichols's contract with National Foreclosure Relief limits its liability to the total

amount of fees paid, and provides that "[a]ny controversy or claim arising out of or relating to

this contract, or the breach thereof, shall be settled by arbitration administered by the American

Arbitration Association or other arbitration resource if otherwise mutually agreed upon in

accordance with the Commercial Arbitration Rules."  Nichols Decl. Ex. B 8; *accord* Affidavit of

---

be true on review of a motion to dismiss pursuant to Rule 12(b)(6) . . . , the facts of Merrill Lynch's fraud are taken
from the amended complaints and any documents on which they rely."  (citations omitted)).

David Ealy, Oct. 18, 2007, Ex. 1.  Nichols, however, was unaware of these provisions when she entered into the agreement with Washington Mutual.  Nichols Decl. ¶ 12.

On or about November 30, 2006, Nichols received a letter from Washington Mutual's counsel postponing the foreclosure sale of her apartment, originally scheduled for November 22, 2006, to December 7, 2006.  Compl. ¶¶ 21, 70.  On or about December 4, 2006, Washington Mutual's Loss Mitigation Department advised her that she was being considered for a loss mitigation assistance program as an alternative to foreclosure.  Nichols Decl. Ex. C.  This led Nichols to believe that Washington Mutual planned to reinstate her loan instead of foreclosing it.  Compl. ¶ 22.  She believed that the December 7, 2006 sale was cancelled as a result of National Foreclosure Relief's intervention.  *Id.* ¶ 23.

Washington Mutual sold Nichols's apartment to Louzon at a foreclosure sale on April 19, 2007 without notifying Nichols.  Compl. ¶¶ 25, 72; Nichols Decl. ¶ 14.  Louzon purchased the apartment for $65,000, Plaintiff's Request for Injunction Staying State Housing Court Proceedings ¶ 30, and Nichols's loan balance was $13,688.66 on March 17, 2006, Compl. ¶ 28.  On or about July 1, 2007, Nichols received a letter from Washington Mutual's counsel regarding the surplus proceeds of the sale, which she has yet to receive.  Compl. ¶¶ 24, 26.  In early August of 2007 Nichols had the apartment appraised at a value of $170,000.  Pl.'s Req. Inj. ¶¶ 31-32 & Ex. H.  Nichols believes that Louzon, who owns another apartment in the building, had inside information regarding the sale and purchased the apartment in bad faith.  Compl. ¶¶ 74, 77-78; Pl.'s Req. Inj. ¶¶ 34-35.[2]

---

[2]     The above statements, made in Nichols's papers in support of her application for a preliminary injunction, are provided only for background; I do not consider them in deciding the merits of the motions to dismiss her complaint.  Accordingly, I need not consider converting this motion into one for summary judgment.

DISCUSSION

A.      *Legal Standard for Motions to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))).  The standards for reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are the same. *See Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) (setting forth both standards).

Accordingly, I must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  However, I need not give effect to "legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, --- F.3d ---, No. 06-4908-CV, 2007 WL 3071637, at *2 (2d Cir. Oct. 23, 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).  While generally "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant "'fair notice of what the . . . claim is and the grounds on which it rests,'" *Erickson*, 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1959), in at least some circumstances a plaintiff must plead specific facts in order to survive a motion to dismiss. *Twombly*, 127 S. Ct. at 1964-65.  The Second Circuit has interpreted this principle as a "flexible 'plausibility standard'" under which a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics omitted) (interpreting *Twombly*).

In deciding the defendants' motions, I may consider documents attached to the complaint as exhibits, or documents upon whose terms the complaint relies. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

B.      *Washington Mutual's Motion to Dismiss Nichols's FDCPA Claims Against It*

Washington Mutual moves to dismiss the FDCPA claims against it, alleging that it is not a debt collector, that it did not attempt to collect a debt, and that the statute of limitations bars any claims that could be made against it under the FDCPA. With one exception, discussed below, the FDCPA creates a cause of action against an entity only if it is a "debt collector." 15 U.S.C. §§ 1692k(a); *see also Fashakin v. Nextel Commc'ns*, No. 05 CV 3080 (SLT)(RER), 2006 WL 1875341, at *3 (E.D.N.Y. July 5, 2006) ("The FDCPA applies only to 'debt collectors,' . . .").

A creditor is generally not a debt collector, *e.g.*, *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 235 (2d Cir. 1998), unless the creditor, "'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts,'" *id.* (quoting 15 U.S.C. § 1692a(6)). Although this exception to the general rule protecting creditors is referred to as the "false name" exception, *e.g.*, *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004), the name need not be technically false -- if the name used creates the impression that a separate entity is collecting the creditor's debts, the exception still applies even if the name is the official name of one of the creditor's subdivisions. *Maguire*, 147 F.3d at 236. Whether or not the name used by the creditor creates the impression that a third party is collecting the debt is determined from the perspective of an unsophisticated consumer. *See id.* ("The triggering of the FDCPA does not depend on whether a

6

third party is in fact involved in the collection of a debt, but rather whether a least sophisticated consumer would have the false impression that a third party was collecting the debt.").[3]

Nichols argues that Washington Mutual should be liable under the false name exception, claiming that Washington Mutual's referral to National Foreclosure Relief, National Foreclosure Relief's use of Washington Mutual's logo on several pages of its November 8, 2007 fax, and the alleged sharing of information between Washington Mutual and National Foreclosure Relief all created the impression that National Foreclosure Relief was an affiliated company and attempting to collect a debt on Washington Mutual's behalf.  Pl.'s Mem. Opp. Mot. Dismiss 3-6.  Washington Mutual argues that it did not create such an impression.  It notes that National Foreclosure Relief provided Nichols with a form to authorize National Foreclosure Relief to gather information from Washington Mutual.  Def.'s Reply Mem. Supp. Mot. Dismiss 7-8 (citing Nichols Decl. Ex. B 5).  It also provides a letter from National Foreclosure Relief which contains a line saying, "National Foreclosure Relief, Inc., is not your lender," and a line at the bottom, marked with asterisks but in a small font, stating that "the above information was gathered from public information."  Affidavit of Candice B. Lieberman, Nov. 9, 2007, Ex. A 2.

---

[3]  *Maguire*, in applying the standard to the false name exception, referred to whether "a least sophisticated consumer" would be deceived.  *Id.  Maguire* in defining the standard cites *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993), which first applied this standard to a different provision of the FDCPA.  *Clomon* refers to *the* least sophisticated consumers, *see id.* at 1319 (quoting *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 872 (2d Cir. 1961), *Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D. Conn. 1989), and *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298, 1306-07 (D. Conn. 1992)), but made clear that the standard is an objective one presuming a degree of reasonableness and attention on the part even of "the 'least sophisticated consumer.'"  *Clomon*, 988 F.2d at 1319; *see also Maguire*, 147 F.3d at 236 ("This objective standard is designed to protect all consumers, 'the gullible as well as the shrewd,' while at the same time protecting debt collectors from liability for 'bizarre or idiosyncratic interpretations of collection notices.'"  (quoting *Clomon*, 988 F.2d at 1318-20)).  Therefore, despite *Clomon*'s terminology, the standard is not truly that of the *least* sophisticated consumer, but of a reasonable unsophisticated consumer.  *See also Maguire*, 147 F.3d at 236 ("The letter must be assessed in terms of 'the impression likely to be left upon the unsophisticated consumer.'"  (quoting *Catherman v. Credit Bureau of Greater Harrisburg*, 634 F. Supp. 693, 695 (E.D. Pa. 1986))).

7

At this stage I cannot say that Washington Mutual did not create an impression, from the perspective of an unsophisticated consumer, that it was affiliated with National Foreclosure Relief. As the question is whether Washington Mutual created the impression that it was affiliated with National Foreclosure Relief, the letters and forms sent by National Foreclosure Relief are beside the point.[4] The allegation regarding Washington Mutual's use of another name is that a Washington Mutual representative told Nichols that National Foreclosure Relief was affiliated with Washington Mutual. Compl. ¶ 14. This would of course convince an unsophisticated consumer that Washington Mutual was affiliated with National Foreclosure Relief.

However, the false name exception requires more than simply that an unsophisticated consumer would believe that the creditor was affiliated with another entity. The consumer must also believe that the other entity was attempting to collect a debt for the creditor.

---

[4] It is worth noting that the letters are not entirely clear to an unsophisticated consumer. The authorization form Washington Mutual cites is a paragraph of legal prose which appears to use the word "you" interchangeably with the term "my mortgage company," and would probably not convey any clear impression to an unsophisticated consumer:

> I hereby do authorize my above mortgage company to discuss my request for payment assistance with the individual(s) that I have identified below as my designated agent(s) (hereinafter the "Designated Agent"). Further, you are authorized to workout the terms of a payment agreement with my Designated Agent and/or their assignees, to deliver documents to my Designated Agent, which concern my request for payment assistance. I understand that I will be fully responsible for reviewing any information that is sent by my mortgage company to my Designated Agent. This authorization will remain effective until I specifically notify my mortgage company's workout department in writing that this authorization is of no further force and effect.

Nichols Decl. Ex. B 5. Additionally, I would in any event not consider the letter provided by Washington Mutual and taken from Nichols's application for a preliminary injunction, Lieberman Aff. Ex. A, as it was not attached to Nichols's complaint. Although Nichols does refer in her complaint to National Foreclosure Relief sending various false and deceptive notices, Compl. ¶ 17, she does not specify that this letter is among them. Accordingly, the letter is not so integral to Nichols's claim as to allow me to consider it without converting this motion into one for summary judgment. *Cf., e.g.*, *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) ("When a plaintiff chooses not to attach to the complaint or incorporate a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take it into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment." (internal quotation omitted)).

Moreover, the creditor must *actually* be attempting to collect a debt to be liable under the false name exception. Maguire, 147 F.3d at 235 (holding that false name exception applies if a creditor, "*in the process of collecting his own debts*, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." (quoting 15 U.S.C. § 1692a(6))). As Washington Mutual was not actually attempting to collect a debt, I need not resolve the question whether an unsophisticated consumer might believe that National Foreclosure Relief was trying to collect Washington Mutual's debt.

Washington Mutual was not "in the process of collecting" its debts, § 1692a(6), when it indicated to Nichols that it was affiliated with National Foreclosure Relief. Nichols contacted Washington Mutual, not the reverse. I am persuaded by the logic of *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, which considered the case of a debtor who, like Nichols, contacted her creditor to inquire "why her mortgage payment check had not been cashed" and determine how she could "bring her mortgage current." No. 05-CV-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005). The court in that case concluded that the FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers. *Id.* I agree.

First, the language of § 1692a(6) does not easily accommodate the actions Washington Mutual took. It is true that § 1692a(6)'s requirement that a creditor be "in the process of collecting" a debt is not identical to the language considered in *Gorham-Dimaggio*, which requires that the prohibited communications be "in connection with the collection of any debt," § 1692e. However, the difference is immaterial here. The fact that Washington Mutual did not bother to contact Nichols to encourage her to purchase National Foreclosure Relief's

services -- or even to mention it the first time Nichols called -- indicates that Washington Mutual did not consider that route to be its preferred means of recovering its money. Instead, it decided to proceed by foreclosing on her apartment, and offered National Foreclosure Relief's name not as a means of collecting the debt but as a service to Nichols.

Additionally, *Gorham-Dimaggio*'s conclusion that "when the consumer initiates the conversation, many of the policy reasons behind the FDCPA disappear," 2005 WL 2098068, at *2, is persuasive. *See Kropelnicki v. Siegel*, 290 F.2d 118, 127 (2d Cir. 2002) (detailing Congressional intent to protect consumers from "collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" (quoting S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697)).

It is true that Nichols alleges in her complaint that "Washington Mutual and National Relief [sic] have attempted to collect a debt from the Plaintiff," (Compl. ¶ 58,) but I am not obliged to give effect to this conclusory statement. Were I required to treat such "legal conclusions couched as factual allegations" as true, *Port Dock & Stone*, 2007 WL 3071637, at *2, Rule 12(b)(6) would be a dead letter. Washington Mutual was not "in the process of collecting a debt" from Nichols, and thus does not fall under the false name exception of § 1692a(6). Washington Mutual is therefore not a "debt collector" as required by the FDCPA.

One provision of the FDCPA applies to individuals who are not debt collectors, rendering it unlawful "to design, compile and furnish any form knowing that such form would be

used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes to such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j. This section is not applicable to Washington Mutual's correspondence with Nichols.

Nichols's theory seems to be that Washington Mutual's correspondence advising her that it was considering her for the Loss Mitigation program created the belief that National Foreclosure Relief was attempting to avoid foreclosure, when in fact National Foreclosure Relief was not doing so. But this does not state a cause of action under § 1692j, because the services National Foreclosure Relief was ostensibly providing, in attempting to avoid foreclosure of Nichols's loan, are simply not debt collection. On Nichols's own factual allegations, her belief was that National Foreclosure Relief was attempting to arrange for an alternate payment plan with Washington Mutual in exchange for a fee paid by Nichols, not that National Foreclosure Relief was attempting to collect Nichols's debt to Washington Mutual. Compl. ¶ 53. Nothing Nichols alleges falls within the scope of § 1692j, which is intended to prevent collection agencies from simply selling their letterhead to creditors to assist creditors in using a false name to collect their debts. *See, e.g.*, *Orenbuch v. North Shore Health Sys., Inc.*, 250 F. Supp. 2d 145, 150 (E.D.N.Y. 2003) (describing the purpose of § 1692j).

Accordingly, Washington Mutual's motion to dismiss Nichols's FDCPA claims against it is granted. This conclusion makes it unnecessary for me to consider Washington Mutual's other arguments.

C. *National Foreclosure Relief's Motion to Dismiss or Stay Pending Arbitration*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, reflects a Congressional policy in favor of enforcing arbitration clauses in contracts. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (noting that FAA provisions "manifest a liberal federal policy favoring arbitration agreements." (internal quotations omitted)). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision applies to a written arbitration term in any contract "evidencing a transaction involving commerce," *id.*, which invokes the full reach of Congress' power under the Commerce Clause, *Circuit City Stores, Inc., v. Adams*, 532 U.S. 105, 112 (2001) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)). The FAA mandates that district courts stay proceedings pending arbitration if it finds they are covered by an agreement to arbitrate. 9 U.S.C. § 3; *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (holding that FAA "leaves no place for the exercise of discretion by a district court").

1. *The Standard for Determining Arbitrability*

The Second Circuit has established a two-part test for determining the arbitrability of claims arising out of contracts not covered by other federal statutes: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute comes within the scope of the arbitration agreement." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (internal citation omitted). The arbitration clause here covers "[a]ny controversy or claim arising out of or relating to th[e] contract, or the breach thereof," Nichols

Decl. Ex. B 8, and there is no claim that this dispute falls outside the clause's broad scope.[5]

Rather, Nichols's claim is that there is no valid agreement to arbitrate.

In determining whether an agreement to arbitrate exists, courts use general principles of state contract law.  *See, e.g.*, *Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) ("When contract formation is at issue in an FAA case, we generally apply state-law principles."), *abrogated on other grounds by Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *see also Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 & n.6 (S.D.N.Y. 2002) (similar). The arbitration agreement does not address which state's law applies, but given that the action is brought in New York by a New York domiciliary and regards the failure to prevent a foreclosure sale in New York, I agree with Nichols that New York law applies.  *See also Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905(KMW), 2006 WL 2990032, at *8 n.22 (S.D.N.Y. Oct. 12, 2006) (applying New York law where agreement did not specify state law to apply; the only state's law to be cited was New York's; and the plaintiff and defendant were located in New York).

2.    *Who Decides Arbitrability*

Ordinarily, whether or not a dispute is arbitrable is a question decided by the courts.  *See Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005) ("[W]e have held that 'the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'"

---

[5]    While Nichols does not incorporate the arbitration agreement into her complaint, she sues National Foreclosure Relief for breach of contract.  Compl. ¶¶ 61-62.  Therefore, her complaint relies on the terms of the contract, and thus I may consider it, and the rules that it incorporates by reference, under *Chambers*, 282 F.3d at 152-53.

(quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (emphasis omitted))).

However, where an arbitration agreement incorporates rules which empower an arbitrator to decide issues of arbitrability, the question of arbitrability is one for the arbitrator and not the courts. *Contec*, 398 F.3d at 208. Here, the arbitration agreement incorporated the Commercial Arbitration Rules of the American Arbitration Association. Nichols Decl. Ex. B. 8. Rule 7 of these rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Affidavit of Stephen A. Walsh, Oct. 19, 2007, Ex. 1, at 3. The Second Circuit in *Contec* expressly found that an arbitration clause incorporating this very provision sufficed to render the question of arbitrability itself arbitrable. *Contec*, 398 F.3d at 208.

However, the particular challenges Nichols makes must be decided by a court. When a party challenges not the validity of the entire contract, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (noting that challenges to the validity of a contract are for the arbitrator), or the application of a valid arbitration clause to the particular dispute at issue, *see Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 124, 126-27 (2d Cir. 2006) (holding that whether a dispute was covered by the parties' arbitration agreement was a question for the arbitrator), but rather the existence or validity of the arbitration clause itself, courts must determine whether the arbitration clause itself exists, and whether it is valid. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003) (noting that inquiry into enforceability of arbitration clause preceded question of whether that clause could refer the issue of arbitrability to the arbitrators); *see also Bar-Ayal*, 2006 WL 2990032, at *8 & n.21 (deciding to review question of existence of arbitration clause

14

as if arbitrability had not been referred to arbitrator).  Nichols's challenges are to the existence

and validity of the arbitration clause,[6] and so I must decide them.

3.     *Whether An Agreement to Arbitrate Exists*

i.     *Lack of Agreement*

Nichols argues that she was unaware of the arbitration clause in the document.

While she casts this as a type of procedural unconscionability, *see* Section C.3.ii *infra*, it is more

properly considered a failure to reach any agreement on the question of arbitration, not a reason

to avoid an agreement that she entered into.  *See, e.g.*, *Bar-Ayal*, 2006 WL 2990032, at *14

(noting that claim of unconscionability "pertains to the validity of the arbitration provision

(rather than to its existence . . . ).").  Under general contract law principles, "in the absence of

fraud or other wrongful act[s] on the part of another contracting party, a party who signs or

accepts a written contract is conclusively presumed to know its contents and to assent to them."

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotations and

ellipses omitted).  This conclusive presumption holds even where a party opposing a motion to

compel arbitration asserts that she was unaware of the contents of the agreement.  *See id.*

(applying presumption to reject nonmovant's factual assertions that he was unaware of

provisions of arbitration clause).  Here Nichols claims that fraudulent statements induced her to

enter the contract generally, but does not claim that she was deceived with respect to the nature

or effect of the arbitration clause.  Any fraud in the inducement of her assent to the entire

contract is a question preserved for the arbitrator if she wishes to assert it, but is not for this

Court.  *See Prima Paint*, 388 U.S. at 403-04 ("[I]f the claim is fraud in the inducement of the

---

[6]     As mentioned above, Nichols does not argue that the dispute falls outside the scope of the arbitration clause.  And while she alleges fraud in the inducement of the contract generally, she seeks to enforce the contract, not to avoid it.  Compl. ¶ 62.

arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").  Therefore, the presumption that she understood the arbitration term in the contract applies and defeats her claim of lack of agreement.  *See Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) ("Plaintiff is bound by the arbitration provision even if she did not read it."  (citation omitted)).

      ii.    *Unconscionability*

    Nichols claims that the arbitration clause should not be enforced due to unconscionability.[7]  An unconscionable agreement is unenforceable.  *E.g.*, *Brennan*, 198 F. Supp. 2d at 381 (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988)).  A contract term is not unconscionable under New York law unless it is both procedurally and substantively unconscionable when made.  *E.g.*, *Bar-Ayal*, 2006 WL 2990032, at *15 (citing *Gillman*, 73 N.Y.2d at 10).  "[P]rocedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa."  *State v. Wolowitz*, 96 A.D.2d 47, 68 (N.Y. 1983) (citation omitted).

    An agreement is substantively unconscionable when its terms unreasonably favor the stronger party.  *E.g.*, *Brennan*, 198 F. Supp. 2d at 382 (citing *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999).  Mandatory arbitration clauses that bind both parties are generally not substantively unconscionable.  *Desiderio*, 191 F.3d at 207 ("Form U-4

---

       [7]      As all issues of unconscionability besides those regarding the arbitration clause itself are to be decided by the arbitrator, *e.g.*, *Buckeye Check Cashing*, 546 U.S. at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."), I do not address whether other aspects of Nichols's contract, such as the limitation on National Foreclosure Relief's liability to Nichols's fees, were substantively unconscionable.

binds *both* parties to mandatory arbitration and may not be said to favor the stronger party unreasonably."); *see also Bar-Ayal*, 2006 WL 2990032, at *16 (noting that arbitration agreement's terms bound both parties); *cf. Brennan*, 198 F. Supp. 2d at 384 (finding arbitration clause substantively unconscionable when it terminated pending lawsuit and was subject to unilateral modification by stronger party). Nichols identifies no special aspect of the arbitration clause that renders it substantively unconscionable. The only one-sided provision Nichols identifies is the limitation on National Foreclosure Relief's liability, which is independent of the arbitration clause. Nichols can assert the unconscionability of this limitation on liability before the arbitrator, but nothing about the clause that compels arbitration is itself unconscionable. Thus, the arbitration clause is not substantively unconscionable.

A contract is procedurally unconscionable if the formation process created "an absence of meaningful choice on the part of one of the parties." *Gillman*, 73 N.Y.2d at 10. Factors to be considered in assessing whether a contract was procedurally unconscionable include "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* at 11. Granting all inferences in Nichols's favor, her contract with National Foreclosure Relief was induced by deceptive tactics that conveyed the impression that National Foreclosure Relief was affiliated with Washington Mutual and was the only option to avoid foreclosure; the arbitration clause was written in fairly small print; and Nichols was not a sophisticated market participant but a homeowner facing eviction with little bargaining power under the circumstances. I need not decide whether this would amount to procedural unconscionability if the arbitration clause

was also substantively unconscionable, but what Nichols alleges is not enough to invalidate the clause on the grounds of procedural unconscionability alone. *See Wolowitz*, 96 A.D.2d at 68 (noting "sliding scale" analysis for procedural and substantive unconscionability); *cf., e.g.*, *Gold*, 365 F.3d at 150 (refusing to hold reciprocal arbitration clause unconscionable despite inequality in bargaining power); *Desiderio*, 191 F.3d at 207 (similar). Therefore, the arbitration clause is not unconscionable.

### iii.     *New York's General Business Law § 399-c*

Nichols suggests that the arbitration clause is void under New York's General Business Law § 399-c. This provision prohibits mandatory arbitration clauses in contracts for the sale or purchase of "consumer goods," which are counterintuitively defined to include any services intended for the personal, family, or household purposes of a consumer. N.Y. Gen. Bus. Law § 399-c(1)(b), (2)(b); *see also Ragucci v. Professional Const. Servs.*, 25 A.D.3d 43, 44 (N.Y. 2005) (holding that architect's contract to design a house qualified as contract for "consumer goods" within the meaning of § 399-c). However, this contract, made by facsimile and wire transfer between a New York citizen in New York and a Nevada corporation in California, *see* Nichols Decl Ex. B 1, is indisputably within the reach of Congress' power over commerce, *see Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005) ("Congress has authority to regulate . . . persons or things in interstate commerce."), and thus it is covered by the FAA, *see Circuit City*, 532 U.S. at 112 (noting that the FAA invokes Congress's commerce power "to the full" (internal quotation omitted)). Accordingly, I have no occasion to consider whether contracts for foreclosure relief also constitute "consumer goods" within the meaning of § 399-c. New York's law renders "null and void" arbitration clauses to which it applies, § 399-c(2)(b), and does so

other than upon "such grounds as exist at law or in equity for the revocation of any contract," 9

U.S.C. § 2. Thus, it would be directly preempted by the FAA if it applied. *See Circuit City*, 532

U.S. at 112 (noting FAA preempts contrary state laws (citing *Southland Corp. v. Keating*, 465

U.S. 1, 11 (1984))).

Accordingly, the arbitration clause in Nichols's contract with National

Foreclosure Relief is valid and enforceable. National Foreclosure Relief's motion to dismiss is

denied. Its motion to stay pending arbitration is granted. *See* 9 U.S.C. § 3 (mandating that

district court stay arbitrable proceedings pending arbitration); *see also Tice v. American Airlines,*

*Inc.*, 288 F.3d 313, 318-19 (7th Cir. 2002) (converting district court's dismissal into stay pending

arbitration).

D.      *The Motions to Dismiss Nichols's State Law Claims*

Washington Mutual and Amit Louzon each move to dismiss the state law claims

against them for lack of subject matter jurisdiction under Rule 12(b)(1). 28 U.S.C. § 1367

provides for supplemental jurisdiction over all claims which are "part of the same case or

controversy under Article III of the United States Constitution" as claims over which the district

court has original jurisdiction. Nichols's state law claims clearly share a "common nucleus of

operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), with her FDCPA

claims, and they thus satisfy § 1367's requirement of being part of the same case or controversy.

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004) (noting that satisfying *Gibbs*'s

"common nucleus" test satisfies § 1367).

However, 28 U.S.C. § 1367(c)(2) provides that a district court may decline to

exercise supplemental jurisdiction over a claim if "the claim substantially preponderates over the

claim or claims over which the district court has original jurisdiction." It is appropriate to decline to exercise supplemental jurisdiction where the federal claims constitute "an appendage" to the state claims forming the "real body of the case," and where litigating the case in district court "can accurately be described as allowing a federal tail to wag what is in substance a state dog." *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 371 (S.D.N.Y. 2000) (internal quotation omitted). Here, I find that Nichols's FDCPA claim against National Foreclosure Relief, stayed pending arbitration, is a mere "appendage" to her state law claims. The only action I would be able to take on her FDCPA claim would be to hear a motion to confirm, vacate, modify or correct the arbitrator's award, which would only allow me a minimal opportunity to revisit the matter submitted to arbitration. 9 U.S.C. §§ 9-11. Accordingly, I decline to exercise supplemental jurisdiction over Nichols's state law claims against Louzon and Washington Mutual. *See also Samuels v. Joyner*, No. 06-0564-WD-M, 2007 WL 505058, at *3 (S.D. Ala. Feb. 13, 2007) (declining to exercise supplemental jurisdiction over state law claims after staying the case's only federal claim pending arbitration).

CONCLUSION

For the reasons set forth above, Washington Mutual's motion to dismiss is granted, National Foreclosure Relief's motion to dismiss is denied, National Foreclosure Relief's motion to stay pending arbitration is granted, and Louzon's motion to dismiss is granted. The dismissal of Nichols's state law claims is without prejudice to Nichols filing those claims in state court. The dismissal of her FDCPA claim against Washington Mutual is with prejudice.

No party having moved for me to do so, I decline to enter judgment on fewer than all of the claims in the case under Rule 54(b). Accordingly, no judgment shall issue until all of

20

the claims are ready for final judgment, and all proceedings in this case are stayed pending the resolution of arbitration between Nichols and National Foreclosure Relief.  My decision not to enter partial judgment is without prejudice to reconsideration on a party's motion.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
        November 21, 2007